
UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       v.       Plaintiff,<br><br>DIONDRE MAURICE OTTO STATELY,<br>                Defendant. | Criminal No. 19-342(1) (ECT/LIB)<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS** |

The defendant, Diondre Stately, through his undersigned attorney, moves the Court for an order suppressing the statement he provided to law enforcement in this case. Mr. Stately maintains that following his arrest, he was interviewed by law enforcement officers while in custody at the Red Lake Police Department, and that statement was not preceded by a knowing and intelligent waiver of his *Miranda* rights and was otherwise involuntary due to the coercive nature of the interview and overall circumstances of the encounter. Therefore, the statement should be suppressed.[1]

## BACKGROUND

On September 21, 2019, Mr. Stately was arrested by Red Lake Police officers and taken to the Red jail after he had been identified as a suspect in a robbery which occurred earlier on the evening of September 21, 2019. Mr. Stately was also the victim of an assault prior to being arrested that evening; the assault on Mr. Stately occurred

---

[1] Defendant has also moved to suppress all statements Mr. Stately made in the course of tribal court proceedings involving the parallel tribal court prosecution for the same offense. See Defendant's Motion to Suppress Statements. The government responded to this part of Defendant's Motion as follows: "The defendant also seeks to suppress any statements made during tribal court proceedings on similar grounds. However, the only statement the government is aware of at this time is defendant's guilty plea entered in tribal court proceedings on November 18, 2019…." Govt. Response to Pretrial Motions. p.5. The government has not provided any other tribal court statements to the defense other than the plea agreement document, (Govt. Ex. 5), and should be barred from offering any other statements obtained during tribal court proceedings in its case against defendant. The constitutionality of using his tribal court conviction is being addressed in a separate memorandum.

after the alleged assault/robbery of George White. T. 28-29.  On September 24, 2019, FBI Agent Gregory, FBI Agent Montgomery, and Red Lake Criminal Investigator Leyba, interviewed Mr. Stately; he was in custody at the jail at the time and was brought over to the Red Lake police department interview room. T. 18-20.  Initially, Mr. Stately was tired and yawning and explained to the investigators that he had been sleeping. Agent Montgomery knew Stately from some previous encounters, and appears to do most of the initial talking, including some discussions regarding their past encounters, and then there are some initial discussions about Mr. Stately having been assaulted prior to his arrest on September 21.  After introducing himself, Agent Gregory says we "heard you got beat up … want to talk to you about that. . . ." (Govt. Ex. 3, Audiotape 1:30-1:35.)

     Following that introduction, Agent Gregory then begins reading Mr. Stately the Miranda warning advisory, and going through the rights advisory with him. (Govt. Ex. 2).  At the conclusion of the rights advisory, Mr. Stately initially does not agree to talk to the officers or sign the advisory form, and he hesitates to talk to the officers. (Ex. 3, 2:55-4:06).  After some back and forth, and including Mr. Stately saying he is confused about what they want to talk to him about, he asks is this "about what happened with Dom?" (Ex. 3, 4:07). Agent Montgomery again references the assault on Mr. Stately that evening, that he wants to know "if BOT is giving you shit," and they "want to make sure it's none of this back and forth again. . . That's all we want to talk to you about." (Ex. 3, 4:16-4:36).  Only after that that clarification and those representations, Mr. Stately signs the rights form and begins to talk to the officers about being assaulted that

evening.

During the first twelve or so minutes of the recorded interview, there is no mention of the George White robbery as a topic of discussion or that Stately was a suspect in that incident. There is no mention of that incident prior to getting him to sign the rights advisory form and agreeing to talk to them.  The officers spend ten minutes or so talking about what he was doing that evening and the events surround Mr. Stately himself being assaulted.  About 12 minutes into that discussion, the agents shift the topic about what happened earlier in the evening before Mr. Stately was assaulted.  Agent Gregory finally leads him into that area and mentions George White for the first time (Ex. 3, 13:42), after which Mr. Stately remains silent, and isn't saying much, and only after several minutes of back and forth and subtle pressure ("you need to tell us your side of the story," Ex. 3,16:32), Mr. Stately eventually starts responding to their new inquiry and eventually makes some arguably incriminating statements.

## ARGUMENT

"Even absent the accused's invocation of the right to remain silent, the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused in-fact knowingly and voluntarily waived [their *Miranda*] rights when making the statement."  *Berhuis v. Thompkins,* 560 U.S. 370, 130 S. Ct. 2250, 2260 (2010) *(citing North Carolina v. Butler,* 441 U.S. 369, 373 (1979)).   The Court's waiver inquiry is twofold:   first, waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and second, waiver must be "made with a full awareness of both the nature of

3

the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The Government bears the burden of demonstrating that a defendant voluntarily, knowingly, and intelligently waived his right to remain silent. *Miranda*, 384 U.S. at 475. Proper waiver may exist even absent express statements of waiver. *Thompkins,* 130 S. Ct. at 2261. "An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence."   *Id.* A court may "presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.*; *Colorado v. Connelly,* 479 U.S. 157, 169-170 (1986). In evaluating a defendant's waiver, courts consider the totality of the circumstances surrounding the waiver. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Courts consider factors such as the defendant's intelligence, education, age, familiarity with the criminal justice system, and the explicitness of the waiver. *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011).

In this case, Mr. Stately's  "waiver" is equivocal, and hardly explicit. Mr. Stately is reluctant to talk to the officers and only consents after the officers deceive him into thinking the interview is about who assaulted him and because he was the victim of an assault and apparent robbery attempt on the evening of September 21. There is no mention of the George White incident, that he was a suspect, or that the purpose of the interview was to question him about his involvement in that incident prior to signing the rights advisory and agreeing to talk.  Accordingly, Mr. Stately was effectively tricked into agreeing to an interview under the guise that he was being

interviewed as a crime victim, not a suspect. Under these circumstances this is hardly a "knowing, intelligent, and voluntary" waiver of his rights, it was coerced and compelled. The statement should be ordered suppressed.

Dated:   December 2, 2020                    Respectfully submitted,

                                                                           *s/ Douglas Olson*

                                                                       _____
                                                                       DOUGLAS OLSON
Attorney ID No. 169067
Attorney for Defendant
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415