UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

          Plaintiff,

v.

Diondre Maurice Otto Stately (1),
Shalaina Star Stately (2),

          Defendants.

Court File No. 19-cr-342 (ECT/LIB)

**REPORT AND RECOMMENDATION**

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, and upon Defendant Diondre Maurice Otto Stately's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 39], Defendant Diondre Maurice Otto Stately's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 40], Defendant Shalaina Star Stately's Motion to Suppress, [Docket No. 43], and Defendant Diondre Maurice Otto Stately's Motion to Dismiss for Constitutional Violations, [Docket No. 118]. The Court held a Motions Hearing on October 30, 2020, regarding Defendants' pretrial motions at which the Parties requested the opportunity to submit supplemental briefing on the present motions. On December 7, 2020, Defendant Diondre Maurice Otto Stately filed a memorandum in support of his motion to dismiss, [Docket No. 134], as well as, a motion for late filing, [Docket No. 135]. Also on December 7, 2020, the Court granted Defendant's motion for late filing, and the Court extended the Government's deadline to respond to Defendant's motion to dismiss until December 21, 2020, [Docket No. 136], after which Defendant Diondre Maurice Otto Stately's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 39],

Defendant Diondre Maurice Otto Stately's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 40], Defendant Shalaina Star Stately's Motion to Suppress, [Docket No. 43], and Defendant Diondre Maurice Otto Stately's Motion to Dismiss for Constitutional Violations, [Docket No. 118], were taken under advisement.[1]

For reasons discussed herein, the Court recommends that: Defendant Diondre Maurice Otto Stately's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 39], be **DENIED**; Defendant Diondre Maurice Otto Stately's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 40], be **DENIED**; Defendant Shalaina Star Stately's Motion to Suppress, [Docket No. 43], be **DENIED**; and Defendant Diondre Maurice Otto Stately's Motion to Dismiss for Constitutional Violations, [Docket No. 118], be **DENIED**.

## I.    Background and Statement of Facts

### A.  Background

Defendants Diondre Maurice Otto Stately and Shalaina Star Stately are charged with one count of robbery, in violation of 18 U.S.C. §§ 1151, 1153(a), and 2111. (Indictment [Docket No. 1]).

### B.  Facts

On September 21, 2019, Federal Bureau of Investigation Special Agent Kyle Gregory was notified by the Red Lake Police Department of an assault and robbery of George White that had allegedly occurred in Red Lake after 1:00 a.m. that same day. (Tr. [Docket No. 127], at 19, 23–24; Govt.'s Ex. 1, at 8). Subsequently, Special Agent Gregory and Red Lake Criminal Investigator Ron Leyba conducted a joint investigation into the alleged assault. (Id. at 25–26, 30–31). Special Agent Gregory pursued potential federal charges while Investigator Leyba pursued potential Red Lake tribal charges. On September 24, 2019, as part of that investigation,

---

[1] The Court addressed Defendants' pretrial discovery motions by separate Order. [Docket No. 133].

Special Agent Gregory and Investigator Leyba interviewed Defendant Diondre Maurice Otto Stately at the Red Lake Police Department. (Id. at 25, 33) Federal Bureau of Investigation Special Agent Justin Montgomery also participated in the interview. (Id. at 20). At the time of the interview, Mr. Stately was in custody at the Red Lake Jail. (Id. at 26–27). The entire interview was recorded.[2] (Id. at 21–22; see also, Govt.'s Ex. 3).

At the outset if the interview, Special Agent Gregory informed Defendant of his rights as follows:

> You have the right to remain silent . . . Anything you say can and will be used against you in court. . . . You have the right to talk to a lawyer for advice before we ask you any questions. . . . You have the right to have a lawyer with you during questioning. . . . If you cannot afford a lawyer one will be appointed for you before any questioning if you wish. . . . If you decide to answer questions now without a lawyer present you have the right to stop answering questions at any time.

(Govt.'s Ex. 3, at 1:55–2:35). After Special Investigator Gregory stated each right, Mr. Stately acknowledged that he understood that particular right. (Id.). After Special Agent Gregory completed reading the entire Miranda warning, he asked Mr. Stately, "does that all make sense to you?" (Id. at 2:30). Mr. Stately clearly responded, "yeah." (Id.). At Special Agent Gregory's request, Mr. Stately then read a consent statement from the Federal Bureau of Investigation Advice of Rights form as follows: "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." (Id. at 2:40–2:55; see also, Govt.'s Ex. 2). Shortly thereafter, Mr. Stately signed the Advice of Rights form. (Govt.'s Ex. 3, at 4:40; see also, Govt.'s Ex. 2).

---

[2] At the Motions Hearing, the Government, without objection, offered the recording of the September 24, 2019, interview into evidence as Government's Exhibit 3. (Tr. [Docket No. 127], at 11).

The interviewers initially asked Mr. Stately about an incident in which Mr. Stately was himself assaulted.[3] (See, Gov't's Ex. 3, at 4:45–12:00). However, the interviewers eventually started questioning Mr. Stately about where he had been prior to that assault. (Id. at 12:05). Then they began asking him about the alleged assault and robbery of George White. (Id. at 13:30).

Mr. Stately confessed to punching George White once. (See, e.g., Id. at 18:00; 20:00; 25:00). Mr. Stately also confessed to splitting George White's casino winnings with Defendant Shalaina Star Stately and two others who were present during the alleged robbery. (Id. at 22:30). Mr. Stately stated that he received $200. (Id.).

The interview concluded at approximately 2:25 p.m. on September 24, 2019. (Id. at 35:00). Throughout the interview's recording, the interviewers can be heard maintaining a conversational tone without raising their voices to yell or threaten Defendant. Likewise, Defendant maintained a conversational tone, and he was clearly cooperative and self-assured throughout the interview. Defendant also responded appropriately to any questions presented.

Following the September 24, 2019, interview, Special Agent Gregory and Investigator Leyba continued their investigation. (Tr. [Docket No. 127], at 30–31). As part of that investigation, Special Agent Gregory, on October 17, 2019, filed an application for a search warrant to authorize law enforcement to search the contents of certain Facebook accounts. (Gov't's Ex. 1). The "Application for a Search Warrant" sought to search information associated with six Facebook URLS:

    a.  https://www.facebook.com/diondre.stately.7;"

    b.  https://www.facebook.com/diondre.stately;

    c.  https://www.facebook.com/shalainastately.9;

---

[3] The incident in which Mr. Stately was assaulted also occurred on September 21, 2019, but it occurred after the alleged assault and robbery of George White. (Tr. [Docket No. 127], at 28–29; see also, Gov't's Ex. 3, at 26:30).

    d.  https://www.facebook.com/shalainastately.35;

    e.   https://www.facebook.com/shalainastately.5;" and

    f.  "https://www.facebook.com/shalainastately.98."

(Id. at 2). In support of this application, Special Agent Gregory submitted an affidavit providing some of the details of his and Investigator Leyba's investigation. (Id. at 7–19).

In his affidavit in support of the search warrant, Special Agent Gregory explained that he had been contacted by Investigatory Leyba regarding an assault and robbery of George White. (Id. at 8). Special Agent Gregory also explained that during a September 25, 2019, interview, Mr. White told Special Agent Gregory that he had won $2,400 gambling and left the casino with $1,500. (Id.). And on the way back to Denise Stately's residence on the Red Lake Indian Reservation from the casino, Defendant Shalaina Stately had told Mr. White to treat her better, and she had been on her phone messaging someone via either text or Facebook. (Id. at 8–9). Mr. White also told Special Agent Gregory that Defendant Diondre Stately and a few other males were at the residence when Mr. White arrived, one of the men approached the drivers side window and hit Mr. White with the butt of a gun, Defendant Diondre Stately punched Mr. White, Defendant Shalaina Stately stood outside the vehicle and observed the assault, and they stole Mr. White's wallet with the $1,500 he had won at the casino, as well as, some lottery tickets he had in his car. (Id. at 9).

Special Agent Gregory further attested that he had interviewed Defendant Diondre Stately on September 24, 2019, and Mr. Stately had told Special Agent Gregory that Defendant Shalaina Stately was calling and Facebook messaging him about Mr. White on September 20, 2019, and into the morning of September 21, 2019, Defendant Diondre Stately had admitted to punching Mr. White, and "[w]hen asked if there was a plan to take White's money, Diondre

stated, 'She [Shalaina] kinda told me to do it' which Shalaina discussed with Diondre through Facebook messaging." (Id.). As provided in his affidavit, Special Agent Gregory also interviewed Defendant Shalaina Stately on September 25, 2019, and she admitted to calling Defendant Diondre Stately on the way back to the casino, but denied knowing he would hit Mr. White. (Id. at 10).

In addition, Special Agent Gregory's affidavit further provided, in relevant part, that he had viewed the Facebook accounts associated with the URLs https://www.facebook.com/diondre.stately and https://www.facebook.com/diondre.stately.7, and he recognized them as belonging to Defendant Diondre Stately "based on the following: both visible account names are Diondre Stately; both account profile pictures are of Diondre; both accounts include numerous uploaded photos of Diondre; and both accounts list that the owner of the account lives in Red Lake, Minnesota and is from Red Lake, Minnesota." (Id.).

The Honorable Jon T. Huseby, United States Magistrate Judge for the District of Minnesota, determined that probable cause existed to support the issuance of the October 17, 2019, Facebook Search Warrant. (Govt.'s Ex. 1, at 13). Thereafter, the Government executed the October 17, 2019, Facebook Search Warrant.

The investigation conducted by Special Agent Gregory and Investigator Leyba ultimately resulted in criminal charges for robbery being brought against both Defendant Diondre Stately and Defendant Shalaina Stately in Red Lake Tribal Court, as well as, the present robbery charges in this federal court. (See, Indictment [Docket No. 1]; Tr. [Docket No. 127], at 15; Govt.'s Exs. 4, 5).

On October 31, 2019, Defendant Shalaina Stately pled guilty to robbery in Red Lake Tribal Court and was sentenced to 90 days in jail and probation. (Tr. [Docket No. 127], at 15;

Govt.'s Ex. 4). At the October 30, 2020, Motions Hearing, Shalaina Stately testified that she was never advised by her tribal court lawyer, or anyone else, that if she pled guilty in tribal court, that conviction could be used as evidence against her in federal court. (Tr. [Docket No. 127], at 16). She also testified that she would not have pled guilty in tribal court had she known that her guilty plea could potentially be used against her in federal court. (Id.). On November 18, 2019, Defendant Diondre Stately also pled guilty to robbery in Red Lake Tribal Court and was sentenced to 365 days in jail. (Govt.'s Ex. 5).

On December 19, 2019, Defendants Diondre Maurice Otto Stately and Shalaina Star Stately were charged by Indictment in this Court with one count of robbery, in violation of 18 U.S.C. §§ 1151, 1153(a), and 2111. (Indictment [Docket No. 1]).

## II.    Defendant Diondre Maurice Otto Stately's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 39]

Defendant Diondre Maurice Otto Stately moves the Court for an Order suppressing any physical evidence obtained from the execution of the October 17, 2019, Facebook Search Warrant. (Def.'s Mot. to Suppress Evid. Obtained as a Result of Search and Seizure [Docket No. 39]). Mr. Stately argues that the October 17, 2019, Facebook Search Warrant "was not supported by probable cause and was overly broad to such a degree that it could not be relied upon in good faith." (Id.).

### A.  Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of

7

criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test . . . to determine whether probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 9–cr–239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (quoting United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005)) (alterations in original). In addition, the issuing court's "determination of probable cause should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 238–39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

### B.  Analysis

As noted above, during his investigation of the alleged conduct underlying the present Indictment, Special Agent Gregory applied for and received the October 17, 2019, Facebook Search Warrant. (Govt.'s Ex. 1). Defendant Diondre Stately argues that evidence flowing from the October 17, 2019, Facebook Search Warrant should be suppressed because the October 17, 2019, Facebook Search Warrant "was not supported by probable cause and was overly broad to such a degree that it could not be relied upon in good faith." (Def.'s Mot. to Suppress Evid. Obtained as a Result of Search and Seizure [Docket No. 39]).

However, Mr. Stately has not submitted any timely written argument in support of his motion to suppress. As such, Mr. Stately's challenge to the October 17, 2019, Facebook Search Warrant is devoid of any specific factual or legal argument addressing that warrant. Because Mr. Stately has offered no sufficiently specific factual or legal grounds for suppression of evidence gathered as a result of the execution of the October 17, 2019, Facebook Search Warrant, the Court could recommend summarily denying Mr. Stately's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 39], solely on the basis that Mr. Stately has failed to meet his burden of production. United States v. Jones, No. 09-cr-260 (DWF/RLE), 2009 WL 4723341, at *4 (D. Minn. Dec. 2, 2009) (citing United States v. Mims, 812 F.2d 1068, 1074 (8th Cir. 1987)); United States v. Quiroz, 57 F. Supp. 2d 805, 822–23 (D. Minn. 1999), report and recommendation adopted by 57 F. Supp. 2d 805, 811 (D. Minn. 1999)). Nonetheless, in an abundance of caution, the Court will address the merits of Mr. Stately's Motion and apply the standards of review as follows.

The Court must first address the threshold issue of standing. Mr. Stately's Motion seeks to suppress all evidence flowing from the October 17, 2019, Facebook Search Warrant. Mr.

Stately does not affirmatory limit his suppression request to only evidence flowing from the Facebook accounts belonging to him. As discussed above, the October 17, 2019, Facebook Search Warrant authorized the search of <u>six</u> different accounts. Two of those accounts belong to Defendant Diondre Stately, while four of those accounts belong to Defendant Shalaina Stately. Accordingly, the Court must first address this threshold, and potentially dispositive, issue of standing.

As noted above, the Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. However, Fourth Amendment rights are personal, and therefore, they may not be asserted vicariously. <u>United States v. Barragan</u>, 379 F.3d 524, 529 (8th Cir. 2004) (citing <u>Rakas v. Illinois</u>, 439 U.S. 128, 133–34 (1978)).

"An individual asserting Fourth Amendment rights 'must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.'" <u>Barragan</u>, 379 F.3d at 529 (citing <u>Minnesota v. Carter</u>, 525 U.S. 83, 88 (1998)); <u>Rakas</u>, 439 U.S. at 133–34. The defendant bears the burden of proving a reasonable expectation of privacy in the area searched. <u>Rakas</u>, 439 U.S. at 130–31.

To establish a legitimate expectation of privacy, a defendant must show a subjective expectation of privacy and that his expectation of privacy is one that society is prepared to recognize as objectively reasonable. "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched, he has no standing to claim that they were searched or seized illegally." <u>Barragan</u>, 379 F.3d at 529–30 (citing <u>United States v. Gomez</u>, 16 F.3d 254, 256 (8th Cir. 1994)). Ultimately, "[a] person who is aggrieved by an illegal search and seizure only

through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." <u>Rakas</u>, 439 U.S. at 134.

The Eighth Circuit has enumerated factors for courts to consider in deciding whether a defendant had an expectation of privacy triggering standing to challenge the constitutionality of a search including:

> [O]wnership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

<u>Gomez</u>, 16 F.3d at 256 (citing <u>States v. Sanchez</u>, 943 F.2d 110, 113 (1st Cir. 1991)).

On the record now before the Court, each of these factors weighs in favor of finding that Mr. Stately lacks standing to assert any challenge to evidence flowing from Defendant Shalaina Stately's Facebook accounts as a result of the execution of the October 17, 2019, Facebook Search Warrant. Defendant Diondre Stately fails to even allege that he has an ownership interest or control over Defendant Shalaina Stately's Facebook accounts; fails to even allege that he ever used Defendant Shalaina Stately's Facebook accounts or had any ability to regulate access to her accounts; and fails to even allege that he had a subjective expectation of privacy in Defendant Shalaina Stately's Facebook accounts. Moreover, nothing on the record now before the Court supports finding that Defendant Diondre Stately had an objective expectation of privacy in Defendant Shalaina Stately's Facebook accounts, and Diondre Stately has failed to demonstrate that the totality of the circumstances surrounding the execution of the October 17, 2019, Facebook Search Warrant merit finding that he had an expectation of privacy in Defendant Shalaina Stately's Facebook accounts.

On that basis, the Court concludes that Defendant Diondre Stately lacks standing to challenge the search of Defendant Shalaina Stately's Facebook accounts, and therefore, Defendant Diondre Stately lacks standing to seek the suppression of any evidence flowing from Defendant Shalaina Stately's Facebook accounts. Thus, the Court's discussion hereafter of Defendant Diondre Stately's request to suppress evidence flowing from the execution of the October 17, 2019, Facebook Search Warrant is limited solely to evidence flowing from the Facebook accounts associated the URLs https://www.facebook.com/diondre.stately and https://www.facebook.com/diondre.stately.7.

"[A] magistrate reviewing a warrant application is charged with the duty of determining whether a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Alexander, 574 F.3d 484, 489 (8th Cir. 2009) (quoting United States v. Hart, 544 F.3d 911, 914 (8th Cir. 2008)). "[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue[.]" United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) (citing United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993)).

Considering the affidavit submitted in support of the October 17, 2019, Facebook Search Warrant which authorized law enforcement to search the Facebook accounts at issue, Judge Huseby could reasonably have concluded that there was a fair probability that evidence of the alleged assault and robbery of Mr. White would be found on Defendant Diondre Stately's Facebook accounts. The affidavit established a nexus between the evidence to be searched for and said Facebook accounts.

Specifically, the Court notes that, in his affidavit, Special Agent Gregory provided some of the details of the investigation, including that Mr. White had told Special Agent Gregory that

he had left the casino with $1,500 and on the way back to a residence on the Red Lake Indian Reservation Defendant Shalaina Stately had told him to treat her better and had been on her phone messaging someone via either text or Facebook. (Govt.'s Ex. 1, at 8–9). Mr. White also told Special Agent Gregory that Defendant Diondre Stately and a few other males were at the residence when Mr. White arrived, one of the men approached the drivers' side window and hit Mr. White with the butt of a gun, Defendant Diondre Stately punched Mr. White from the passengers' side of the vehicle, and they stole Mr. White's wallet with the $1,500 he had won at the casino, as well as, some lottery tickets he had in his car. (Id. at 9).

Special Agent Gregory further attested that Defendant Diondre Stately had told Special Agent Gregory that: Defendant Shalaina Stately was calling and Facebook messaging him about Mr. White on September 20, 2019, and into the morning of September 21, 2019; Defendant Diondre Stately admitted punching Mr. White; and "[w]hen asked if there was a plan to take White's money, Diondre stated, 'She [Shalaina] kinda told me to do it' which Shalaina discussed with Diondre through Facebook messaging." (Id.).

In addition, Special Agent Gregory attested he recognized the Facebook accounts as belonging to Defendant Diondre Stately because "both visible account names are Diondre Stately; both account profile pictures are of Diondre; both accounts include numerous uploaded photos of Diondre; and both accounts list that the owner of the account lives in Red Lake, Minnesota and is from Red Lake, Minnesota." (Id. at 10).

Upon review of Special Agent Gregory's affidavit, this Court finds that Judge Huseby had a sufficient basis upon which to believe that probable cause existed for the issuance of the October 17, 2019, Facebook Search Warrant as it relates to Defendant Diondre Stately's Facebook accounts. The affidavit contains information concerning Defendant Diondre Stately

and Defendant Shalaina Stately's alleged involvement in the assault and robbery. (Id. at 8–10). The affidavit also contains information concerning Defendant Diondre Stately and Defendant Shalaina Stately's alleged communications about Mr. White immediately preceding the alleged assault and robbery, including that Mr. White told Special Agent Gregory that Defendant Shalaina Stately had been on her phone messaging someone via either text or Facebook prior to the alleged assault and robbery, and that Defendant Diondre Stately told Special Agent Gregory that Defendant Shalaina Stately had "kinda told [him] to do it" in a discussion through Facebook messaging. (Id. 8–9). In addition, the affidavit contains information concerning how Special Agent Gregory recognized the Facebook accounts as belonging to Diondre Stately. (Id. at 10). Accordingly, the affidavit articulates a sufficient basis upon which to find that a fair probability existed to conclude that the search would uncover evidence of a crime, as well as, a sufficient basis upon which to demonstrate a nexus between the items to be searched for and the Facebook accounts to be searched; thus, there was probable cause for Judge Huseby to issue the warrant as it relates to the Defendant Diondre Stately's Facebook accounts.

In addition, assuming solely for the sake of argument that the affidavit of Special Agent Gregory was not sufficient to establish probable cause or a nexus between the items to be searched for and the place to be searched, the Court concludes that officers relied in good faith on the probable cause determination by Judge Huseby when executing the October 17, 2019, Facebook Search Warrant as it relates to Defendant Diondre Stately's Facebook accounts.

Although evidence obtained as a result of the execution of a warrant unsupported by probable cause is generally inadmissible, Mapp v. Ohio, 367 U.S. 643 (1961), there is an exception "when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." Davis v. United States, 564 U.S. 229, 238–39 (2011) (quoting United States

14

v. Leon, 468 U.S. 897, 922 (1984)). There are four circumstances in which the good-faith exception does not apply:

> (1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) "the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

United States v. Marion, 238 F.3d 965, 969 (2001).

The record currently before the Court shows that law enforcement's good-faith reliance on the warrant issued authorizing the search of Defendant Diondre Stately's Facebook accounts militates against suppressing the evidence obtained during the execution of the October 17, 2019, Facebook Search Warrant. In his affidavit in support of his application for a search warrant, Special Agent Gregory presented sufficient facts indicating that Mr. Stately was involved in the alleged assault and robbery, and Defendant Diondre Stately engaged in discussions with Defendant Shalaina Stately through Facebook messaging that were related to the alleged assault and robbery. In his affidavit, Special Agent Gregory further presented sufficient facts indicating that the Facebook accounts belonged to Defendant Diondre Stately. Accordingly, the affidavit in support of the October 17, 2019, Facebook Search Warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." In addition, it did not render the warrant "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

Thus, the Court concludes that the officers involved relied in good faith on the October 17, 2019, Facebook Search Warrant which had been issued by Judge Huseby.[4]

---

[4] To the extent that Defendant Diondre Stately's motion to suppress evidence can be construed as also challenging the October 17, 2019, Facebook Search Warrant on grounds that it was overbroad and lacked particularity, the Court

Therefore, this Court recommends that Defendant Diondre Maurice Otto Stately's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 39], be **DENIED**.

### III.     Defendant Diondre Maurice Otto Stately's Motion to Suppress Statements, Admissions, and Answers [Docket No. 40]

Defendant Diondre Maurice Otto Stately moves the Court for an Order suppressing the statements made by him to law enforcement and evidence gained as a result of those statements. (Def.'s Mot. to Suppress Statements, Admissions, and Answers [Docket No. 40]).[5]

---

notes that the Fourth Amendment requires warrants to "particularly describ[e] the place to be searched, and the person or things to be seized."

> Particularity prohibits the government from conducting "general, exploratory rummaging of a person's belongings." "To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." Furthermore, "[t]he degree of specificity required will depend on the circumstances of the case and on the type of items involved." This particularity standard is one of "practical accuracy rather than" of hypertechnicality.

United States v. Sigillito, 759 F.3d 913, 923 (8th Cir. 2014). The October 17, 2019, Facebook Search Warrant authorized the search of specific Facebook accounts identified by their URLs, and it authorized the seizure of records regarding the events immediately before and after the alleged assault and robbery of Mr. White, evidence related to the crime alleged, and evidence related to ownership of the identified Facebook accounts. (Govt.'s Ex. 1, at 2, 4). As such, the Court concludes, under the totality of the circumstances of this case, that the October 17, 2019, Facebook Search Warrant was not overbroad, nor did it lack in particularity.

[5] In addition, Mr. Stately "seeks suppression of any and all statements made during tribal court proceedings on similar grounds as well as a violation of his rights to due process and equal protection under the law." (Def.'s Mot. to Suppress Statements, Admissions, and Answers [Docket No. 40]; see also, Mem. in Supp. [Docket No. 130], at 1 n.1). However, the only such statement identified by Mr. Stately is his guilty plea. (Mem. in Supp. [Docket No. 130], at 1 n.1). Moreover, the Government has represented that the only such statements it is aware of is Mr. Stately's guilty plea. (Govt.'s Response [Docket No. 50], at 5; Mem. in Opp'n [Docket No. 139], at 7). Nevertheless, Mr. Stately argues that the Government "should be barred from offering any other statements obtained during tribal court proceedings in its case against defendant." (Mem. in Supp. [Docket No. 130], at 1 n.1). Because Mr. Stately has offered no sufficient factual or legal grounds for suppression of these statements, nor has he even identified any specific statements he made which he believes should be suppressed, this Court recommends denying his Motion to Suppress Statements, Admissions, and Answers, [Docket No. 40], to the extent that it seeks the suppression of "other statements obtained during tribal court proceedings," because Mr. Stately has failed to meet his burden of production. See, United States v. Peterson, No. 15-cr-165 (35) (JRT/LIB), 2016 WL 1626848, at *3 (D. Minn. Apr. 25, 2016) ("On a motion to suppress, 'at a minimum it is defendant's burden to come forth with some evidence and argument to support his position that evidence, statements or a witness identification should be suppressed,' " and "[i]n motions to suppress evidence, a moving party must specify the statement or evidence which is sought to be suppressed, and articulate with clarity the factual and legal basis upon which each is sought to be suppressed.") (internal citations omitted); Quiroz, 57 F. Supp. 2d at 822–23 ("The Motion is boilerplate in form. It merely request suppression of all statements made by Defendant. The Motion does not specify the statements Defendant seeks to have suppressed, nor the specific legal and factual grounds for the objections. As a result, no hearing was required, and the Motion should be denied based upon the pleadings."). Mr. Stately does not

In support of the present Motion, Mr. Stately contends that his confession made during the recorded interview that was conducted at the Red Lake Police Department on September 24, 2019, "was not proceeded by a knowing and intelligent waiver of his Miranda rights and was otherwise involuntary due to the coercive nature of the interview and overall circumstances of the encounter." (Mem. in Supp. [Docket No. 130], at 1). Therefore, Defendant argues, that his confession during the September 24, 2019, interview should be suppressed. (Id.).

**A. Standard of Review**

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Accordingly, Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444).

A defendant is entitled to a Miranda warning prior to custodial interrogation. Miranda, 384 U.S. at 444–45. "Interrogation under Miranda includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." United States v. Hull, 419 F.3d 762, 767 (8th Cir. 2005) (quoting Rhode Island v. Innis, 466 U.S. 291, 300–01 (1980)). Whether an

specifically challenge the use of his guilty plea in this motion. However, this Court construes Plaintiff's request broadly to include his guilty plea, and this Court recommends denying Mr. Stately's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 40], to the extent that it seeks the suppression of his guilty plea, for the same reasons as this Court recommends denying Defendant Shalaina Star Stately's Motion to Suppress, [Docket No. 43]. See, Infra.

incriminating response is sought by an officer is determined "from the perspective of the suspect" and not by the officer's actual intent. United States v. Richardson, 427 F.3d 1128, 1132 (8th Cir. 2005).

A defendant may waive their rights, "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444.

### B. Analysis

#### i. Waiver of Rights

Defendant Diondre Maurice Otto Stately contends that all of his statements made during the recorded interview of September 24, 2019, were custodial and were not proceeded by a knowing and intelligent waiver of his Miranda rights. (Mem. in Supp. [Docket No. 130], at 1, 4–5). Mr. Stately further contends that, any rights warning notwithstanding, his waiver and statements were in any event not voluntary under the circumstances. (Id.).

As noted above, Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury, 511 U.S. at 322 (quoting Miranda, 384 U.S. at 444). To be subject to suppression under Miranda, a statement must be made while in custody and in response to interrogation. United States v. McGlothen, 556 F.3d 698, 701 (8th Cir. 2009) (citing United States v. Londondio, 420 F.3d 777, 783 (8th Cir. 2005)). A defendant may nevertheless waive his rights, "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444.

It is undisputed that the questioning of Mr. Stately during the recorded interview on September 24, 2019, constituted interrogation. (See, Mem. in Supp. [Docket No. 130]; Mem. in Opp'n [Docket No. 139]). It is also undisputed that Mr. Stately was in custody during the

recorded interview. (See, Mem. in Supp. [Docket No. 130]; Mem. in Opp'n [Docket No. 139]). The record also clearly demonstrates that Mr. Stately was read a Miranda warning before the interview began, and he both verbally and in writing acknowledged that he understood the rights warning. (See, Govt.'s Ex. 2; Govt.'s Ex. 3, at 1:55–2:55). The Advice of Rights form signed by Mr. Stately represents an express waiver of those rights. (See, Govt.'s Ex. 2).

Accordingly, the only issues now before the Court regarding the September 24, 2019, interview is whether Mr. Stately's waiver of his rights was made knowingly and intelligently, and whether his waiver and confession were made voluntarily.

### 1. Voluntariness

Courts assess whether a waiver of rights pursuant to Miranda was made voluntarily by considering "the conduct of law enforcement officials and the suspect's capacity to resist any pressure." United States v. Contreras, 372 F.3d 974, 978 (8th Cir. 2004). The United States Supreme Court has previously explained "that coercive police activity is a necessary predicate to . . . finding that a confession is not 'voluntary,'" Colorado v. Connelly, 479 U.S. 157, 167 (1986), and the Eighth Circuit has read that holding to mean "that police coercion is a necessary prerequisite to a determination that a waiver was involuntary and not as bearing on the separate question whether the waiver was knowing and intelligent." United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (quoting United States v. Bradshaw, 935 F.2d 295, 299 (D.C. Cir. 1991)).

In determining whether a waiver or confession was made voluntarily, a court "looks at the totality of the circumstances and must determine whether the individual's will was overborne." United States v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002). In considering the totality of the circumstances, a court reviews whether the statement was "extracted by threats, violence,

19

or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Sanchez, 614 F.3d 876, 883 (8th Cir. 2010) (internal quotation marks and citations omitted). "More specifically, [a court] consider[s], among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." Id. (citing Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004)).

Mr. Stately contends that his waiver and confession were not voluntary because he "was effectively tricked into agreeing to an interview under the guise that he was being interviewed as a crime victim, not a suspect." (Mem. in Supp. [Docket No. 130], at 4–5). However, "[t]actics such as deception . . . do not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne." Simmons v. Bowersox, 235 F.3d 1124, 1133 (8th Cir. 2001) (emphasis added).

The Court's review of the totality of the circumstances shown in the present record does not indicate that Mr. Stately's will was in any way overborn. Nothing in the present record indicates that the environment in which the interview occurred was inherently coercive. The interview was conducted in a Red Lake Police Department conference room, around a table that could seat approximately 10 people, and Mr. Stately was not handcuffed. (See, Tr. [Docket No. 127], at 19–20). Further, the interview only lasted for approximately 35 minutes, thus it was not coercive in its duration. See, e.g., United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995) (noting that interrogation lasting more than two hours was not coercive in duration); Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988) (finding confession was voluntary despite a seven and one-half hour interrogation).

The recording of the September 24, 2019, interview demonstrates that the interview was conducted in a conversational tone, and the interviewers made no threats or promises to Mr. Stately to induce his rights waiver and confession. See, United States v. Mims, 567 F. Supp. 2d 1059, 1080 (D. Minn. 2008) (holding Miranda waiver voluntary where, among other factors, interview was conducted in a reasonable, conversational tone); see also, Makes Room, 49 F.3d at 415 (concluding no coercive tactics were used where, among other things, officers made no threats or promises to the defendant). The recording of the September 24, 2019, interview also shows that Mr. Stately spoke willingly and non-defensively with the officers throughout.

Moreover, although Mr. Stately contends that the interviewers "deceive[d] him into thinking the interview [wa]s about who assaulted him," the interviewers clearly stated to Defendant that another reason why they wanted to talk to him was about why he was arrested and the incident with George White before they began questioning him on that subject. (Govt.'s Ex. 3, at 13:30).

Therefore, under the totality of the circumstances, the Court concludes that Mr. Stately's waiver of his Miranda rights prior to the September 24, 2019, interview and his subsequent confession were voluntary.

### 2. Knowing and Intelligent

Next, the Court must consider whether Mr. Stately's waiver of his rights prior to the interview on September 24, 2019, was knowingly and intelligently made. Vinton, 631 F.3d at 483. The evidence in the record regarding Mr. Stately's understanding of his rights and presence of mind at the inception of the September 24, 2019, interview (as well as throughout the remainder of the interview) consists of the audio recording introduced into evidence at the hearing. (See, Govt.'s Ex. 3).

21

On the present record, the Government offers sufficient evidence related to the September 24, 2019, recorded interview of Mr. Stately for the Court to determine that Mr. Stately's waiver of his <u>Miranda</u> rights prior to that interview was not only voluntary but also knowingly and intelligently made.

The audio recording of the September 24, 2019, interview shows that Special Agent Gregory read Mr. Stately his <u>Miranda</u> rights. (Govt.'s Ex. 3, at 1:55–2:35). After Special Agent Gregory read each <u>Miranda</u> right, Defendant clearly and affirmatively acknowledged that he understood that particular right, and after Special Agent Gregory completed reading Mr. Stately his rights, Mr. Stately clearly and affirmatively acknowledged that he understood his rights as a whole. (<u>Id.</u>). Mr. Stately also clearly read a consent statement from the Advice of Rights form, which acknowledged that he understood his rights and was willing to speak with the interviewers. (<u>Id.</u> at 2:40–2:55; <u>see also</u>, Govt.'s Ex. 2). Moreover, Mr. Stately signed the Advice of Rights form further indicating that he understood his rights, and the signing of such a form "carries a significant weight in determining whether [Mr. Stately's] waiver was knowing and intelligent." <u>United States v. Gallardo</u>, 495 F.3d 982, 991 (8th Cir. 2007) (citing <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979)).

Nothing in the present record indicates that Defendant displayed any signs of confusion or the inability to understand his rights. To the contrary, Defendant talked openly and clearly for the duration of the interview. Defendant provided appropriate and responsive answers to the questions posed. Defendant never declined to answer questions or otherwise indicated that he no longer wished to talk. And there is no indication in the present record that Defendant was under the influence of drugs or alcohol or otherwise impaired in anyway such that he would have been unable to understand his rights.

Therefore, under the totality of the circumstances, the Court concludes that Mr. Stately's waiver of his <u>Miranda</u> rights prior to the September 24, 2019, interview was knowing and intelligent.

Accordingly, this Court recommends that Defendant Diondre Maurice Otto Stately's Motion to Suppress Statements, Admissions, and Answers. [Docket No. 40], be **DENIED**.

## IV.    Defendant Shalaina Star Stately's Motion to Suppress [Docket No. 43]

Defendant Shalaina Star Stately moves the Court for an Order "suppressing evidence related to her guilty plea in Red Lake Tribal Court to identical charges as she currently faces in this case." (Def.'s Mot. to Suppress [Docket No. 43]).

Ms. Stately argues that the U.S. Supreme Court's holding in <u>Padilla v. Kentucky</u>, 559 U.S. 356 (2010), "requires a defendant be advised that a guilty plea [in Red Lake Tribal Court] could be used in a subsequent federal prosecution." (Mem. in Supp. [Docket No. 129], at 1). Ms. Stately further argues that because she was never advised by her tribal court lawyer that her guilty plea could potentially be used against her in a subsequent federal prosecution, her Sixth Amendment right to effective assistance of counsel was violated. (<u>Id.</u> at 1–4). Therefore, Ms. Stately contends that her tribal court guilty plea should be suppressed in this case. (<u>Id.</u> at 4).

However, Ms. Stately's argument is fundamentally flawed because the Sixth Amendment does not apply to proceedings in tribal court. <u>U.S. v. Bryant</u>, 136 S. Ct. 1954, 1962 (2016); <u>see also</u>, <u>U.S. v. Cavanaugh</u>, 643 F.3d 592, 595 (8th Cir. 2011) ("Although Indians are citizens of the United States entitled to the same constitutional protections against federal and state action as all citizens, the Constitution does not apply to restrict the actions of Indian tribes as separate, quasi-sovereign bodies.").

Tribal court proceedings are governed by the Indian Rights Act of 1968 ("ICRA"), 25 U.S.C. § 1301 et seq. Bryant, 136 S. Ct. at 1958–59. Through the ICRA, "Congress accorded a range of procedural safeguards to tribal-court defendants 'similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment.'" Id. at 1962 (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 57 (1978)). However, "[t]he right to counsel under ICRA is not coextensive with the Sixth Amendment right." Id. "If a tribal court imposes a sentence in excess of one year, ICRA requires the court to accord the defendant 'the right to effective assistance of counsel at least equal to that guaranteed by the United States Constitution,' including appointment of counsel for an indigent defendant at the tribe's expense." Id. (quoting 25 U.S.C. § 1302(c)(1), (2)). "If the sentence imposed is no greater than one year, however, the tribal court must allow a defendant only the opportunity to obtain counsel 'at his own expense.'" Bryant, 136 S. Ct. at 1962 (citing 25 U.S.C. § 1302(a)(6)). "In tribal court, therefore, unlike in federal or state court, a sentence of imprisonment up to one year may be imposed without according indigent defendants the right to appointed counsel." Id.; see also, Cavanaugh, 643 F.3d at 596 ("Accordingly, if a tribe elects not to provide for the right to appointed counsel through its own laws, Indian defendants in tribal court have no Constitutional or statutory right to appointed counsel unless sentenced to a term of incarceration greater than one year.").

Here, Defendant Shalaina Stately was sentenced in Red Lake Tribal Court to 90 days in jail and probation. (Tr. [Docket No. 127], at 15; Govt.'s Ex. 4). Indeed, Ms. Stately represents that "[d]ue to the limited authority of the Red Lake Tribal Court, Ms. Stately faced a maximum punishment in tribal court of 365 days." (Mot. to Supp. [Docket No. 43]). Accordingly, Ms. Stately had no right to counsel during her Red Lake Tribal Court proceedings, and her argument necessarily fails. See, e.g., Bryant, 136 S. Ct. at 1962 (quoting United States v. Shavanaux, 647

F.3d 993, 1000 (10th Cir. 2011)) (alterations in original) ("Because a defendant convicted in tribal court suffers no Sixth Amendment violation in the first instance, '[u]se of tribal convictions in a subsequent prosecution cannot violate [the Sixth Amendment] "anew."'"); United States v. Gillette, 3:17-CR-30122-RAL, 2018 WL 3151642, at *4 (D.S.D. Jan. 29, 2018) (finding that the Sixth Amendment right to counsel was not violated where the defendant's counsel in tribal court proceedings did not inform him his guilty plea could be used against him in a subsequent federal prosecution "because the Sixth Amendment does not apply to tribal court proceedings").[6]

Therefore, this Court recommends that Defendant Shalaina Star Stately's Motion to Suppress, [Docket No. 43], be **DENIED**.[7]

---

[6] Moreover, Ms. Stately's argument also fails for another reason. Ms. Stately concedes that "the Eighth Circuit has definitively stated that the use of a guilty plea in a subsequent federal proceeding is not a direct consequence of a plea and may be used against a defendant in a subsequent prosecution," as well as, that "[g]enerally, a defendant must only be advised of a direct consequence of a guilty plea, not potential collateral consequences." (Mem. in Supp. [Docket No. 129], at 1); see also, United States v. Williams, 104 F.3d 213, 216 (8th Cir. 1997). Nonetheless, as already noted, Plaintiff contends that this Court should find that she received ineffective assistance of counsel pursuant to the U.S. Supreme Court's holding in Padilla. In Padilla, the U.S. Supreme Court held that to satisfy the Sixth Amendment, "counsel must inform her client whether his plea carries a risk of deportation." 559 U.S. at 374. However, in Padilla the U.S. Supreme Court emphasized the "unique nature of deportation" and declined to consider whether the distinction made by lower courts between direct and collateral consequences was generally appropriate. Id. at 365. Subsequently, in Chaidez v. United States, the U.S. Supreme Court reiterated that Padilla "did not eschew the direct-collateral divide across the board," and that the Court "relied on the special 'nature of deportation'—the severity of the penalty and the 'automatic' way it follows from conviction—to show that '[t]he collateral versus direct distinction [was] ill-suited' to dispose of Padilla's claim." 568 U.S. 342, 355 (2013). Following Padilla and Chaidez, other courts have continued to distinguish between direct and collateral consequences outside the limited context of deportation. See, e.g., Gillette, 2018 WL 3151642, at *7 & n.57 (collecting cases). Therefore, because the use of Ms. Stately's Red Lake Tribal Court guilty plea in this subsequent federal case is a collateral consequence of that plea which falls outside of the scope of the Supreme Court's holding in Padilla, Ms. Stately would not be entitled to relief even if the Sixth Amendment were applicable. See, e.g., Gillette, 2018 WL 3151642, at *6–7 (finding that although the defendant was not informed that his tribal court guilty plea could be used against him in federal court, he was not entitled to relief, in part, because "[e]ven in the aftermath of Padilla, [the defendant's] guilty plea is a collateral consequence that is not under the Sixth Amendment's right to counsel").

[7] This Court notes that in her moving papers, Ms. Stately also generically purports to suppress her guilty plea on due process grounds. (Mot. to Suppress [Docket No. 43]). However, the use in federal court of tribal court convictions that comply with the ICRA does not violate a defendant's due process rights. See, Bryant, 136 S. Ct. at 1966; Gillette, 2018 WL 3151642, at *7; see also, Shavanaux, 647 F.3d at 1000 ("We hold that tribal convictions obtained in compliance with ICRA are necessarily compatible with due process of law.").

**V.      Defendant Diondre Maurice Otto Stately's Motion to Dismiss for Constitutional Violations [Docket No. 118]**

Defendant Diondre Maurice Otto Stately moves the Court for an Order "dismiss[ing] this case on grounds that he is being prosecuted for the very same offense for which he has already been prosecuted, convicted, and sentenced in Red Lake Tribal Court, having by now completed a year long sentence imposed in that case." (Def.'s Mot. to Dismiss for Constitutional Violations [Docket No. 118]). Specifically, Mr. Stately argues that his prosecution in federal court for the same robbery offense that he was previously convicted of in Red Lake Tribal Court, as well as, the Government's failure to follow the Petite policy, violated the Double Jeopardy Clause, the Due Process Clause, and his Equal Protection Clause. (Mem. in Supp. [Docket No. 134]). Therefore, Mr. Stately further argues that "the indictment in this case should be dismissed." (Id. at 17).

Mr. Stately asserts that "[i]t is fundamentally unfair to put a citizen through successive prosecutions for the same offense," and Mr. Stately contends that his rights under the Double Jeopardy Clause and the Due Process Clause have been violated because he is being prosecuted in this federal case after he was already convicted in Red Lake Tribal Court. (See, Id. at 1). However, Mr. Stately's argument is precluded by U.S. Supreme Court precedent.

The U.S. Supreme Court has long recognized "that Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory, they are 'a separate people' possessing 'the power of regulating their internal and social relations . . . .'" United States v. Mazurie, 419 U.S. 544, 557 (1975) (alteration in original) (citation omitted) (quoting United States v. Kagama, 118 U.S. 375, 381–82 (1886)).

In United States v. Lara, the U.S. Supreme Court held that when an Indian Tribe criminally prosecutes a nonmember Indian, the Indian tribe is exercising its inherent authority as

26

a sovereign and not exercising any "federal power." <u>See</u>, 541 U.S. 193 (2004). Thus, the Double Jeopardy Clause does not prohibit the Government from prosecuting a defendant for a discrete federal offense despite the fact that he had previously pled guilty to a similar offense in tribal court. <u>Id.</u> at 210.

Recently, in <u>Gamble v. United States</u>, the U.S. Supreme Court declined to overrule the "dual-sovereignty" doctrine, upon which <u>Lara</u> was based. 139 S. Ct. 1960 (2019). Under the dual-sovereignty doctrine, "a crime under one sovereign's laws is not 'the same offense' as a crime under the laws of another sovereign." <u>Id.</u> at 1964.

Here, the Tribe acted in its capacity as a sovereign when it previously prosecuted and convicted Mr. Stately for burglary in Red Lake Tribal Court. Thus, the Double Jeopardy Clause is not implicated in his subsequent prosecution by the Federal Government in this case. Plaintiff's argument that his successive prosecutions violated his rights under the Double Jeopardy Clause and Due Process Clause is precluded by U.S. Supreme Court precedent. <u>See</u>, <u>Gamble</u>, 139 S. Ct. at 1964, 1980; <u>Lara</u>, 541 U.S. at 210; <u>see also</u>, <u>United States v. Antelope</u>, 548 F.3d 1155, 1157 (8th Cir. 2008) (finding the defendant's argument that the Double Jeopardy Clause prohibited federal prosecution based on the same incident as was already prosecuted in tribal court was foreclosed by <u>Lara</u>); <u>United States v. Kepler</u>, No. 20-CR-00276-GKF, 2021 WL 66654, at *3 (N.D. Okla. Jan. 7, 2021) (finding a fifth prosecution did not violate "fundamental fairness" and due process where the "four prior prosecutions were under the laws of . . . a separate sovereign and therefore a separate 'offence'"); <u>United States v. Fischer</u>, No. 19-cr-320 (SRN/LIB), 2020 WL 4727429, at *6 (D. Minn. Aug. 14, 2020) (finding the defendant's motion to dismiss on grounds "that 'the Double Jeopardy and Due Process Clauses of the Fifth

Amendment' prohibit[ed] his prosecution for the 'same crime' that he was prosecuted for in Red Lake Tribal Court" was "foreclosed by the holding in Lara").

Mr. Stately also asserts that "the failure of the U.S. Attorney's office to follow [the Petite Policy] in [this] case involving subsequent federal prosecution of a case already prosecuted in the Red Lake tribal courts is alarming, discriminatory, and fundamentally unfair," and Mr. Stately contends that his due process rights have been violated by this purported failure. (Mem. in Supp. [Docket No. 134], at 11).

The Petite policy is a discretionary policy of the Department of Justice." United States v. Leathers, 354 F.3d 955, 962 (8th Cir. 2004).

> Under the [Petite Policy], a United States attorney may not prosecute a person in federal court "if the alleged criminality was an ingredient of a previous state prosecution against that person" unless the federal prosecution "is specifically authorized in advance by the [DoJ] itself, upon a finding that the prosecution will serve 'compelling interests of federal law enforcement.'"

United States v. Basile, 109 F.3d 1304, 1308 (8th Cir. 1997) (quoting Thompson v. United States, 444 U.S. 248, 248 (1980)).

The Eighth Circuit has repeatedly "held that the Petite policy 'does not confer any substantive rights on a criminal defendant" and cannot form the basis of a claim that the prosecution was improper.'" United States v. Lester, 922 F.2d 174, 176 (8th Cir. 1993) (quoting United States v. Simpkins, 953 F.2d 443, 445 (8th Cir. 1992)); accord, Leathers, 354 F.3d at 962; In re U.S., 197 F.3d 310, 315 (8th Cir. 1999); Basile, 109 F.3d at 1308. Because the Petite Policy does not confer any substantive rights on a defendant, the purported failure to adhere to it is not a basis to dismiss an Indictment. See, Lester, 922 F.2d 174 (finding that the Petite Policy did not provide a basis to dismiss a federal indictment where the defendant had already been convicted in tribal court); see also, United States v. Ruiz, No. 4:08-CR-40009-001, 2008 WL 2004254, at

*2 (W.D. Ark. May 8, 2008) (collecting cases and noting that "[c]ourts have uniformly held that a criminal defendant cannot invoke the Petite Policy as a bar to federal prosecution").

Therefore, Defendant's argument that this case should be dismissed because his due process rights were violated by the Government's failure to follow the <u>Petite</u> Policy is precluded by Eighth Circuit precedent. <u>See</u>, <u>Leathers</u>, 354 F.3d at 962; <u>Lester</u>, 922 F.2d at 176; <u>In re U.S.</u>, 197 F.3d at 315; <u>Basile</u>, 109 F.3d at 1308; <u>Simpkins</u>, 953 F.2d at 445.[8]

Lastly, Mr. Stately asserts that although the Government does not apply the <u>Petite</u> Policy in cases involving convictions in tribal court, it does apply the policy when considering similar cases involving convictions in state court, and Mr. Stately contends that "[t]he unequal treatment and discriminatory effect of charging a Native American twice for the same offense and ignoring official government policy violates the Equal Protection Clause of the United States Constitution" (Mem. in Supp. [Docket No. 134], at 12–13).

However, as already noted, the <u>Petite</u> Policy does not confer any substantive rights on a criminal defendant. <u>See, e.g.</u>, <u>Lester</u>, 922 F.2d at 176. As such, the Government's failure to apply of <u>Petite</u> Policy cannot form a basis to dismiss the Indictment, and Mr. Stately's argument necessarily fails. <u>See</u>, <u>Leathers</u>, 354 F.3d at 962; <u>Lester</u>, 922 F.2d at 176; <u>In re U.S.</u>, 197 F.3d at 315; <u>Basile</u>, 109 F.3d at 1308; <u>Simpkins</u>, 953 F.2d at 445

Moreover, distinguishing between tribal court and state court defendants is not a race-based classification.

---

[8] The Government also asserts that "the Petite policy does not apply to tribal court convictions and the Government argues that Mr. Stately "cannot raise the Petite policy as a shield against the dual sovereignty doctrines as the policy only applies to prior state or federal prosecutions." (Mem. in Opp'n [Docket No. 138], at 4). At least one other court has reached the same conclusion. <u>See, e.g.</u>, <u>United States v. Williams</u>, No. 2:14-CR-179-RMP, 2015 WL 1471059, at *2 (E.D. Wash. Mar. 31, 2015) ("The policy makes no mention of tribal court convictions. Thus, the plain language of the policy only applies to prior state or federal prosecutions, not to prior tribal prosecutions."). However, it is not necessary for the Court to address this issue because even if the <u>Petite</u> Policy does apply, it cannot form the basis for dismissal.

> In <u>United States v. Antelope</u>, 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701
> (1977), the Court held that federal criminal statutes did not violate the "equal
> protection requirements implicit in the Due Process Clause of the Fifth
> Amendment" because distinctions based upon tribal affiliation were not invidious
> race-based distinctions; they were distinctions based upon "'the quasi-sovereign
> status of [Indian tribes] under federal law.'"

<u>United States v. Cavanaugh</u>, 643 F.3d 592, 605 (8th Cir. 2011) (quoting <u>Antelope</u>, 430 U.S. at 644, 646).

Accordingly, other courts have consistently rejected similar equal protection arguments that are not based on the <u>Petite</u> Policy. <u>See</u>, <u>Antelope</u>, 430 U.S. at 646 (rejecting "the argument that denying (the Indian plaintiffs) access to the Montana courts constitutes impermissible racial discrimination"); <u>Cavanaugh</u>, 643 F.3d at 605–06 (rejecting the argument that a statute which permitted Indians to be convicted based upon prior, uncounseled convictions in tribal court violated equal protection); <u>United States v. Scott</u>, No. CR 19-29-GF-BMM, 2020 WL 2126694, at *3 (D. Mont. May 4, 2020) (rejecting the argument that "the Major Crimes Act bases federal jurisdiction on an impermissible race-based classification"); <u>United States v. Archambault</u>, 174 F. Supp. 2d 1009, 1023 (D.S.D. 2001) (rejecting the argument that "statutory provisions are discriminatory because they 'place non-member Indians in jeopardy of tribal criminal prosecution and subsequent federal prosecution for the same act"); <u>see also</u>, <u>Gillette</u>, 2018 WL 3151642, at *8 ("Such a claim fails because there is no racial classification—only a political one—and because any differential treatment is rationally related to a legitimate government interest—and obligation—to protect Native Americans.").

Therefore, this Court recommends that Defendant Diondre Maurice Otto Stately's Motion to Dismiss for Constitutional Violations, [Docket No. 118], be **DENIED**.

## VI.     Conclusion

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.   Defendant Diondre Maurice Otto Stately's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 39], be **DENIED**;

2.  Defendant Diondre Maurice Otto Stately's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 40], be **DENIED**;

3.  Defendant Shalaina Star Stately's Motion to Suppress, [Docket No. 43], be **DENIED**; and

4.  Defendant Diondre Maurice Otto Stately's Motion to Dismiss for Constitutional Violations, [Docket No. 118], be **DENIED**.


Dated: January 11, 2021                                          s/Leo I. Brisbois
                                                                 Leo I. Brisbois
                                                                 U.S. MAGISTRATE JUDGE


## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.