UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,                    File No. 19-cr-342 (ECT/LIB)

        Plaintiff,

v.
                                             **OPINION AND ORDER**

(1) Diondre Maurice Otto Stately and
(2) Shalaina Star Stately,

        Defendants.

---

Gina Allery and Deidre Y. Aanstad, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Douglas Olson, Office of the Federal Defender, Minneapolis, MN, for Defendant Diondre Maurice Otto Stately.

Peter B. Wold, Wold Morrison Law, Minneapolis, MN, for Defendant Shalaina Star Stately.

---

       Defendants Diondre Maurice Otto Stately and Shalaina Star Stately are each charged with one count of robbery in violation of 18 U.S.C. §§ 2, 1151, 1153(a), and 2111 arising from an incident that occurred on September 21, 2019, on the Red Lake Indian Reservation. Indictment [ECF No. 1]. Diondre Stately filed motions to suppress evidence obtained as a result of a search [ECF No. 39] and to suppress statements [ECF No. 40] as well as a motion to dismiss the case for constitutional violations [ECF No. 118]. Shalaina Stately filed a motion to suppress evidence related to a guilty plea she entered in Red Lake Nation Tribal Court to charges arising from the same incident. ECF No. 43. In a Report and Recommendation ("R&R"), Magistrate Judge Leo I. Brisbois recommends that each

of Defendants' motions be denied.  R&R at 31 [ECF No. 142].  Defendants filed objections

to the R&R.  ECF No. 149 ("Diondre Stately's Obj."); ECF No. 144 ("Shalaina Stately's

Obj.").  The Government filed responses to Defendants' objections.  ECF Nos. 148, 153.

After requesting and receiving permission, Diondre Stately filed a reply to the

Government's response to his objections.  ECF Nos. 155, 156, 158.  The R&R must be

reviewed de novo pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure

59(b)(3), and Local Rule 72.2(b)(3) to the extent of Defendants' objections.  Based on that

review, the R&R will be accepted.

I

Following a report of an assault and robbery on the Red Lake Indian Reservation on

September 21, 2019, the FBI and Red Lake Police Department initiated a joint

investigation.  Tr. at 19, 23–26, 30–31 [ECF No. 127]; Gov't Ex. 1 at 7–8 ¶¶ 2, 5.  As a

result of this investigation, Defendants were charged with various offenses, including

robbery, in Red Lake Nation Tribal Court.  Tr. at 15, 33–34; Gov't Ex. 4, 5.  Both Shalaina

Stately and Diondre Stately pleaded guilty to the charges against them.  Tr. at 15; Gov't

Ex. 4, 5.  Shalaina Stately was sentenced to 90 days in jail and probation, and Diondre

Stately was sentenced to 365 days in jail.  Tr. at 15–16; Gov't Ex. 4, 5.  On December 19,

2019, shortly after resolving their tribal court cases, Defendants were indicted on robbery

charges in federal court based on the September 21, 2019 incident.  ECF No. 1.  At the

motion hearing before Magistrate Judge Brisbois, Shalaina Stately testified that she was

not advised by her tribal court lawyer, or anyone else, that a guilty plea and conviction in

tribal court could be used as evidence against her in federal court.  Tr. at 16.  She also

testified that she would not have pleaded guilty in tribal court had she been aware of that fact.[1] *Id.*

## II

Diondre Stately objects to Magistrate Judge Brisbois's recommendation that his motion to dismiss the case for constitutional violations be denied. *See* R&R at 26–30. In support of his objection, Mr. Stately advances several arguments rooted in the Fifth Amendment to the United States Constitution. For the reasons discussed below, Mr. Stately's objections to the R&R will be overruled.

## A

Mr. Stately first argues that his prosecution in this case violates the Double Jeopardy Clause in the Fifth Amendment.[2] The Double Jeopardy Clause generally provides that a defendant cannot be prosecuted twice for the same offense. U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]"). However, courts "have long held that a crime under one sovereign's laws is not 'the same offence' as a crime under the laws of another sovereign." *Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019). Accordingly, under the so-called "dual sovereignty" doctrine, multiple prosecutions are not for the same offense if brought by separate

---

[1]    The R&R describes the facts surrounding Defendants' alleged offense and the resulting investigation at length. R&R at 2–7. These facts need not be duplicated here given the nature of Defendants' objections and are incorporated by reference.

[2]    Mr. Stately acknowledges there is existing precedent contrary to this argument yet nevertheless advances the argument for preservation purposes. *See* Diondre Stately's Obj. at 13–14. The argument is addressed here with this understanding.

sovereigns, "even when those actions target the identical criminal conduct through equivalent criminal laws." *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1870 (2016); *see Gamble*, 139 S. Ct. at 1964. In other words, when a defendant's conduct violates the laws of two sovereign entities, it is actionable by each independently.

As the Supreme Court has explained, the determination of whether prosecuting entities are dual sovereigns for double jeopardy purposes does not track the "usual attributes" of sovereignty, such as a government's ability to create and enforce its own criminal laws, but rather turns on the "ultimate source" of the power underlying the prosecutions at issue. *Sanchez Valle*, 136 S. Ct. at 1870–71 (citation omitted); *see United States v. Wheeler*, 435 U.S. 313, 318 (1978) (explaining the dual sovereignty doctrine does not apply "in every instance where successive cases are brought by nominally different prosecuting entities"), *superseded by statute on other grounds*, Pub. L. 101-511, 104 Stat. 1892–93, *as recognized in United States v. Lara*, 541 U.S. 193 (2004). The Supreme Court has held that the prosecutorial powers of Indian[3] tribes have a source apart from "delegated federal authority," and thus, Indian tribes are considered separate sovereigns, such that the Federal Government may prosecute an individual for a crime under federal law even if an Indian tribe has prosecuted him for the same conduct under tribal law, and vice versa, without running afoul of the Double Jeopardy Clause. *Lara*, 541 U.S. at 199, 210; *Wheeler*, 435 U.S. at 329–30; *see also Gamble*, 139 S. Ct. at 1964, 1967 (reaffirming that successive state and federal prosecutions do not violate the Fifth Amendment and collecting cases).

---

[3]     The term "Indian" rather than "Native American" is used throughout this opinion as the governing legal authorities follow that practice.

The dual sovereignty doctrine applies to successive tribal and federal prosecutions both when the defendant is a member of the prosecuting Indian tribe and when the defendant is a nonmember Indian. *Wheeler*, 435 U.S. at 329–30; *Lara*, 541 U.S. at 210.

Supreme Court precedent precludes dismissing Mr. Stately's case on double jeopardy grounds. Indeed, a number of decisions from the District of Minnesota have addressed similar claims of violations of the Double Jeopardy Clause stemming from prosecutions brought in both Red Lake Nation Tribal Court and federal court based on events occurring on the Red Lake Indian Reservation and reached the same conclusion. *See, e.g.*, *United States v. Fisher*, No. 19-cr-320 (SRN/LIB), 2020 WL 4727429, at *5–6 (D. Minn. Aug. 14, 2020); *see also United States v. Head*, No. 02-cr-75(1) (ADM/RLE), 2007 WL 2026391, at *4 (D. Minn. July 9, 2007); *United States v. Norquay*, 702 F. Supp. 228, 229–30 (D. Minn. 1989). Mr. Stately has not identified, nor has research revealed, any authority supporting his position on this issue. Because Mr. Stately's prosecution in tribal court was brought by a separate sovereign, his prosecution in federal court is not for the same offense and therefore does not violate the Double Jeopardy Clause.

## B

As an alternative ground for dismissal, Mr. Stately argues that notwithstanding the above, the Government's own policy on successive prosecutions should prevent his prosecution here. Specifically, Mr. Stately points to the "Petite Policy," an internal Department of Justice policy meant to channel prosecutorial discretion in cases where multiple prosecutions are allowable under the dual sovereignty doctrine. *See Rinaldi v. United States*, 434 U.S. 22, 28–29 (1977) (per curiam) ("Although not constitutionally

mandated, [the Petite] policy serves to protect interests which, but for the 'dual sovereignty' principle inherent in our federal system, would be embraced by the Double Jeopardy Clause."); *see also* U.S. Dep't of Justice, *Justice Manual*, § 9-2.031(B) (updated January 2020) (stating the policy "applies even where a prior state prosecution would not legally bar a subsequent federal prosecution under the Double Jeopardy Clause because of the doctrine of dual sovereignty."). In response, the Government argues that this policy does not apply in the case of prior tribal court convictions. Gov't Mem. in Opp'n at 4 [ECF No. 138].

By its own terms, the Petite Policy focuses solely on successive prosecutions arising between state and federal courts and makes no mention of successive prosecutions arising between tribal and federal courts:

> This policy establishes guidelines for the exercise of discretion by appropriate officers of the Department of Justice in determining whether to bring a federal prosecution based on substantially the same act(s) or transactions involved in a prior *state or federal* proceeding.
>
> [. . .]
>
> Although there is no general statutory bar to a federal prosecution where the defendant's conduct already has formed the basis for a *state* prosecution, Congress expressly has provided that, as to certain offenses, a *state* judgment of conviction or acquittal on the merits shall be a bar to any subsequent federal prosecution for the same act or acts.
>
> [. . .]
>
> This policy precludes the initiation or continuation of a federal prosecution, following a prior *state or federal* prosecution based on substantially the same act(s) or transaction(s) unless three substantive prerequisites are satisfied[.]

[. . .]

This policy applies whenever there has been a prior *state or federal* prosecution resulting in an acquittal, a conviction, including one resulting from a plea agreement, or a dismissal or other termination of the case on the merits after jeopardy has attached.

U.S. Dep't of Justice, *Justice Manual*, § 9-2.031 (updated January 2020) (emphasis added). The plain language of the Petite Policy demonstrates that it does not apply in this case. Even if the policy were applicable in this case, the Eighth Circuit has roundly rejected Mr. Stately's argument because as a discretionary internal guidance policy, the Petite Policy "does not confer any substantive rights" and "cannot form the basis for a claim of improper prosecution" or dismissal of an indictment. *United States v. Leathers*, 354 F.3d 955, 962 (8th Cir. 2004); *see also United States v. Lester*, 992 F.2d 174, 176 (8th Cir. 1993); *United States v. Simpkins*, 953 F.2d 443, 445 (8th Cir. 1992).

C

Mr. Stately also challenges the exclusion of tribal prosecutions from the Petite Policy, suggesting this omission and the resulting successive prosecutions of tribal court defendants such as himself in federal court, evinces impermissible race-based discrimination against Indians. *See* Diondre Stately's Obj. at 6, 9–13. In essence, Mr. Stately's argument boils down to a claim of selective prosecution. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("[T]he decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification[.]" (internal quotation marks and citation omitted)).

Mr. Stately's characterization of the treatment of members of the Red Lake Indian Tribe and nonmember Indians charged in Red Lake Nation Tribal Court in this context as a function of race is contrary to well-established legal doctrine.  The Supreme Court has long recognized that Indian tribes are "domestic dependent nations that exercise inherent sovereign authority."  *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (internal quotation marks and citations omitted); *see also United States v. Mazurie*, 419 U.S. 544, 557 (1975) (citation omitted) (stating "Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory"); *Lara*, 541 U.S. at 204.  The Supreme Court also has recognized "the plenary power of Congress, based on a history of treaties and the assumption of a 'guardian-ward' status, to legislate on behalf of federally recognized Indian tribes," which is "drawn both explicitly and implicitly from the Constitution itself."  *Morton v. Mancari*, 417 U.S. 535, 551–52 (1974) (citing U.S. Const. art. I, § 8, cl. 3 and art. II, § 2, cl. 2); *see also Bay Mills*, 572 U.S. at 788.  For this reason, the Supreme Court has repeatedly upheld laws that provide "particular and special treatment" to Indian tribes as compared to other entities, noting that such a distinction is not based on racial classifications but rather on tribal membership, provided that the policy "can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians."  *Mancari*, 417 U.S. at 554–55; *see also United States v. Antelope*, 430 U.S. 641, 645–47 (1977) (concluding federal criminal statutes regulating conduct within Indian country enforced against respondent tribe members were "based neither in whole nor in part upon impermissible racial classifications").  As the *Mancari* Court observed,

> [l]iterally every piece of legislation dealing with Indian tribes and reservations . . . single[s] out for special treatment a constituency of tribal Indians living on or near reservations. If these laws, derived from historical relationships and explicitly designed to help only Indians, were deemed invidious racial discrimination, an entire Title of the United States Code (25 U.S.C.) would be effectively erased and the solemn commitment of the Government toward the Indians would be jeopardized.

417 U.S. at 552. In enacting § 1153 of the Major Crimes Act, Congress expressly authorized the federal prosecution of Indians for certain serious crimes committed within Indian country, including robbery. 18 U.S.C. § 1153(a). That statute does not subject Indians to federal criminal jurisdiction based on race but rather on their tribal enrollment. *Antelope*, 430 U.S. at 646–47; *see United States v. Cavanaugh*, 643 F.3d 592, 605–06 (8th Cir. 2011). As the Government points out, the present prosecution stems from the federal government's "responsibility to the Red Lake Nation that includes providing adequate law enforcement and ensuring adequate public safety[.]" Gov't Resp. to Diondre Stately's Obj. at 6. Thus, its prosecution of Mr. Stately is not the product of an impermissible racial classification.

Even if Mr. Stately were correct in asserting that the Government's decision to prosecute this case should be reviewed for selective prosecution based on race, he has not met his burden in establishing an equal protection violation. In general, courts are hesitant to second-guess prosecutorial decisions. *See Armstrong*, 517 U.S. at 463–65. A prosecutor's decision to charge a criminal offense is afforded a presumption that his or her actions do not violate equal protection. *Id.* at 464–65. Nevertheless, a defendant can rebut this presumption by showing "clear evidence to the contrary." *Id.* at 465 (citing *United*

*States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)).  A defendant must show that "the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'"  *Id.* (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

"To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."  *Id.*; *Leathers*, 354 F.3d at 963.  This is a difficult comparison to make in the present case.  This is primarily because non-Indians are not commonly in a situation like Mr. Stately's—convicted in tribal court and vulnerable to a subsequent federal prosecution—because tribal courts "generally lack criminal jurisdiction over non-Indians who commit crimes in Indian country."  *United States v. Bryant*, 136 S. Ct. 1954, 1960 n.4 (2016); *see Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 195, 212 (1978); *cf.* 25 U.S.C. § 1301(2) (stating that tribes have the "inherent power" to exercise criminal jurisdiction over "all Indians"); *Lara*, 541 U.S. at 210 (holding that the inherent authority of Indian tribes allows them to prosecute nonmember Indians).  In short, there is not a readily available point of comparison for this prong of the analysis.

On this issue, Mr. Stately argues that if he had been charged initially in state court, he would not be subject to the present federal prosecution.  Diondre Stately's Obj. at 3, 13; Diondre Stately's Reply at 2–4.  This assertion misses the point.  The defendant in Mr. Stately's hypothetical, initially charged in an entirely different criminal justice system, is not similarly situated to Mr. Stately here.  *See United States v. Holthusen*, No. 13-cr-71(3) (RHK/LIB), 2013 WL 5913843, at *12 (D. Minn. Oct. 13, 2013) ("Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial

factors that might justify making different prosecutorial decisions with respect to them." (quoting *United States v. Venable*, 666 F.3d 893, 900–01 (4th Cir. 2012))).  Mr. Stately has not provided evidence of different treatment of similarly situated individuals that would satisfy the first prong of a selective prosecution claim.  Further, Mr. Stately's suggestion that he would receive the same treatment as any other defendant charged initially in state court (including any non-Indian defendant) had he been charged initially in state court underscores that the successive prosecution he complains of here does not turn on his race, but rather the criminal justice system in which the case originated.  Therefore, Mr. Stately has not demonstrated that the practice he complains of has a discriminatory effect.

With respect to the second prong of the selective prosecution analysis, Mr. Stately has not pointed to any evidence of a discriminatory purpose in the Government's decision to prosecute him.  On the contrary, the Government notes in its response to Mr. Stately's objection that it has a "responsibility to the Red Lake Nation that includes providing adequate law enforcement and ensuring adequate public safety" and that "there is a federal interest in prosecuting the perpetrators of assaults and robberies that occur on the Red Lake Indian Reservation."  Gov't Resp. to Diondre Stately's Obj. at 6.  This is consistent with Congress's inclusion of those specific offenses in the Major Crimes Act, 18 U.S.C. § 1153(a), and demonstrates a legitimate federal interest in prosecuting offenses that directly harm members of Indian tribes.  *See Mancari*, 417 U.S. at 554–55.  Mr. Stately may be correct in speculating that if his initial charge was in Minnesota state court, the Government would decline to bring a successive prosecution.  But that suggestion, without more, does not dispel the legitimate reasons offered for the Government's prosecution of

this case.  In short, Mr. Stately has not demonstrated that the present prosecution amounts to a violation of the Equal Protection Clause.

## D

Finally, Mr. Stately asserts that his current federal prosecution is so unfair that it shocks the conscience and should be dismissed as it violates principles of fundamental fairness mandated by the Due Process Clause.  "While there may be circumstances in which the conduct of law enforcement agents is so outrageous that due process bars the government from invoking the judicial process to obtain a conviction, the level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court."  *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003) (internal quotation marks and citations omitted).  "This defense is reserved for conduct that falls 'within that narrow band of the most intolerable government conduct.'"  *Id.* (quoting *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993)).  In view of the large volume of case law disposing of the various arguments Mr. Stately raises in factually similar situations and the absence of any suggestion that the Government's indictment of Mr. Stately is unsupported by evidence or the product of improper collusion between federal and tribal authorities, the present prosecution cannot be said to so offend a fundamental principle of justice as to rise to the level of outrageousness needed to support a due-process violation.

## III

Shalaina Stately argues that evidence of her guilty plea in the Red Lake Nation Tribal Court should be suppressed because she was not properly informed that her plea

12

could later be used in a federal criminal proceeding.  Specifically, Ms. Stately contends that the Supreme Court's holding in *Padilla v. Kentucky*, 559 U.S. 356 (2010), can be read to apply to these facts and requires suppression of her guilty plea.  Shalaina Stately's Obj. at 1–2.  Ms. Stately's argument fails for several reasons.

First, Ms. Stately's argument is predicated on the applicability of the Sixth Amendment at the time of her guilty plea in tribal court.  In effect, Ms. Stately argues the use of that guilty plea in the present case would cause her to "suffer[] anew" from a prior deprivation of her Sixth Amendment right to effective assistance of counsel.  *See Burgett v. Texas*, 389 U.S. 109, 115 (1967) (holding that the admission of a prior conviction obtained in violation of a defendant's right to counsel to support guilt or enhance punishment for a different offense was not harmless error).  However, Ms. Stately's argument ignores a crucial distinction from *Burgett*: the inapplicability of the Sixth Amendment to criminal proceedings in tribal court.

As discussed above in the context of the dual sovereignty doctrine, courts have recognized that Indian tribes are separate sovereigns predating the Constitution, and therefore, are "unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978).  Rather than the Sixth Amendment, the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1302(c), defines criminal defendants' rights in tribal court.  To be sure, the ICRA provides criminal defendants the right to effective assistance of counsel "at least equal to that guaranteed by the United States Constitution" in tribal court proceedings where an Indian tribe seeks to impose a term of imprisonment greater than one year.

25 U.S.C. § 1302(c)(1).  But where the possible term of imprisonment is no greater than one year, a defendant in tribal court need only be afforded the opportunity to obtain counsel "at his own expense" and is not entitled to appointed counsel.  *See id.* §§ 1302(a)(6), 1302(c); *see also Bryant*, 136 S. Ct. at 1962.  A defendant's right to counsel under the ICRA, while somewhat similar to that contained in the Bill of Rights, "is not coextensive with the Sixth Amendment right."  *Bryant*, 136 S. Ct. at 1962; *accord United States v. Drapeau*, 827 F.3d 773, 777 (8th Cir. 2016).  Because a tribal court defendant's right to counsel stems solely from the ICRA, tribal court prosecutions do not implicate the right to counsel under the Sixth Amendment.  *Bryant*, 136 S. Ct. at 1962, 1966 ("Because a defendant convicted in tribal court suffers no Sixth Amendment violation in the first instance, '[u]se of tribal convictions in a subsequent prosecution cannot violate [the Sixth Amendment] anew.'" (quoting *United States v. Shavanaux*, 647 F.3d 993, 998 (10th Cir. 2011))).

In view of the inapplicability of the Sixth Amendment to tribal court prosecutions, other courts have rejected the argument underlying Ms. Stately's objection.  *See Bryant*, 136 S. Ct. at 1964 (concluding use of uncounseled prior tribal court convictions as predicate offenses in a federal prosecution did not infringe a constitutional right); *Gillette*, 2018 WL 3151642, at *4–6 (rejecting argument that the defendant's Sixth Amendment right to counsel was violated because he was not informed that his guilty plea in tribal court could be used in successive criminal prosecution).  Here, Ms. Stately had no right to

14

counsel in her tribal court proceedings under either the ICRA[4] or the Sixth Amendment. Ms. Stately cannot retroactively superimpose Sixth Amendment requirements upon a validly entered guilty plea in tribal court. For this reason, her argument that her guilty plea must be suppressed because it was entered without effective assistance of counsel fails.

Second, even assuming that Ms. Stately did have a right to counsel at the time of her guilty plea, her view of what constitutes "effective assistance" in her case is divorced from established law on this subject. To this end, Ms. Stately urges a liberal reading of *Padilla* that would require counsel to warn a defendant that a tribal court conviction may be used in federal criminal proceedings prior to the defendant's entry of his or her plea in tribal court. Shalaina Stately's Obj. at 1–2.

The Eighth Circuit has ruled that the Constitution requires that "a defendant must be 'fully aware of the direct consequences' of his plea." *United States v. Williams*, 104 F.3d 213, 216 (8th Cir. 1997) (quoting *United States v. Long*, 852 F.2d 975, 979 (7th Cir. 1988)). However, "[u]se of [a prior] plea in a subsequent federal proceeding is not a direct consequence" but rather a collateral one. *Id.* In *Padilla*, the Supreme Court held that the Sixth Amendment requires counsel to inform a defendant "whether [a] plea carries a risk of deportation." 559 U.S. at 374. In doing so, the Court declined to wholly upend the direct-collateral consequence distinction, instead finding it "ill suited" to assessing a claim of ineffective assistance of counsel "concerning the specific risk of deportation." *Id.* at

---

[4]    Ms. Stately faced a maximum sentence of 365 days and was sentenced to a 90-day jail term. The tribal court went beyond the requirements imposed by ICRA when it appointed counsel to represent her. *See* Tr. at 15; Gov't Ex. 4.

365–66 ("We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required . . . . Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation.") (internal citation omitted).  Instead, the court focused on the special characteristics of deportation—its severity and its nearly "automatic" certainty for many defendants.  *Id.* at 366.  The Supreme Court subsequently clarified that *Padilla* "did not eschew the direct-collateral divide across the board." *Chaidez v. United States*, 568 U.S. 342, 355 (2013).

Ms. Stately does not cite any authority to support her position that the use of a tribal court plea in a federal prosecution amounts to a circumstance of a "unique nature" akin to *Padilla.*  Shalaina Stately's Obj. at 1–2.  In contrast to the near-automatic nature of deportation at issue in *Padilla*, a successive federal prosecution, because of its discretionary nature, is far from a sure thing at the time a guilty plea is entered in tribal court.  Indeed, courts have declined to extend the principles of *Padilla* beyond the context of deportation, *see Gillette*, 2018 WL 3151642, at *7 & n.57 (collecting cases), and there is no compelling reason to do so here.  The use of Ms. Stately's tribal court conviction in her federal prosecution is a collateral consequence of her guilty plea in tribal court, not a direct one.  *See id.* at *6–7.  Accordingly, even if the Sixth Amendment were applicable, suppression of her plea would not be warranted.[5]

---

[5]       In her objections, Ms. Stately states that ". . . Due Process, and fundamental fairness require a different result in this case."  Shalaina Stately's Obj. at 2; *see also* Shalaina Stately's Mot. to Suppress at 2 [ECF No. 43].  But she does not advance any particular argument grounded in due process.  Even if she had, Ms. Stately's motion to suppress

IV

Neither party has objected to Magistrate Judge Brisbois's recommendations that Diondre Stately's Motion to Suppress Evidence Obtained as a Result of Search and Seizure and Motion to Suppress Statements, Admissions, and Answers be denied. Therefore, these portions of the R&R have been reviewed for clear error. Finding no such error, these recommendations will be adopted.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1.     Defendant Diondre Maurice Otto Stately's Objections to the Report and Recommendation [ECF Nos. 149, 158] are **OVERRULED**;

2.     Defendant Shalaina Star Stately's Objections to the Report and Recommendation [ECF No. 144] are **OVERRULED**;

3.     The Report and Recommendation [ECF No. 142] is **ACCEPTED**;

4.     Defendant Diondre Maurice Otto Stately's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [ECF No. 39] is **DENIED**;

5.     Defendant Diondre Maurice Otto Stately's Motion to Suppress Statements, Admissions, and Answers [ECF No. 40] is **DENIED**;

---

would not be granted on this basis. The use of tribal court convictions obtained in compliance with ICRA in a subsequent federal prosecution "does not violate a defendant's right to due process." *Bryant*, 136 S. Ct. at 1966; *see also Shavanaux*, 647 F.3d at 1000. And, as discussed above, the Bill of Rights, including the Fifth Amendment, does not apply in tribal court proceedings. *See Gillette*, 2018 WL 1446410, at *4.

6.      Defendant Shalaina Star Stately's Motion to Suppress [ECF No. 43] is **DENIED**; and

7.      Defendant Diondre Maurice Otto Stately's Motion to Dismiss for Constitutional Violations [ECF No. 118] is **DENIED**.


Dated:  March 30, 2021                          s/ Eric C. Tostrud
                                                Eric C. Tostrud
                                                United States District Court